May it please the Court, my name is David Hagigia. I'm the attorney for petitioner Mr. Omar Bonilla-Banegas, who is in attendance here today. Your Honor, if we could reserve about eight minutes of time. That's fine. Thank you, Judge. Watch your own time. Thank you, Your Honor. Your Honors, the Court should remand this case to determine the impact of recent cases redefining the test for a particular social group. The term particular social group is quote-unquote in flux in the Ninth Circuit and the BIA is the... Well, that's all quite true and that I must say was my initial reaction. However, the BIA then went on to say, in addition, it's not clear that the respondent was targeted because of his alleged membership in a particular social group or rather as retaliation. In other words, whatever social group they're saying he hasn't demonstrated that he's been targeted because of it as opposed to because he's a police officer or whatever. He doesn't know who was shooting him and so on. So they seem to be saying whatever social group it was, he hasn't made out his case. Well, I think, Your Honor, they limited it more so to particularly the visibility aspect and one... Well, that's at the beginning. Right. But then they say in addition. That's what I'm asking you. Right. Well, at that point, I think when Mr. Bonilla-Bonegas was before the immigration judge, that portion was really not fully explored. The judge rejected particular social group right off the bat. And the judge never analyzed whether as a former officer, Mr. Bonilla-Bonegas' life would be in danger for risk of future persecution. And therefore... Another problem is... Yes. ...that at no time that he was in Honduras was he a former police officer, right? It was almost only... Well, after he ran away. Well, he left. He quit and left. He didn't quit. He ran away. He ran away. Okay. So he was never a former police officer while he was in Honduras. Right. But what happens is when he returns back to Honduras, he returns as obviously a former... Okay. And a lot of what he was saying was they were telling me to quit. I'm sorry. They were telling me, they were threatening me that I better quit. I better leave the police force. That's what they were threatening me to do. Right. And they took up on those threats by... Fine. ...trying to kill him twice. I agree with that. So what evidence is there that once he's not in the police force, anybody's going to have a problem with him? Well, I think that's pervasive across all the cases, Your Honor. No? Sorry, what? I think that would be pervasive across all the cases that there is a member of either the police force or of the military. Well, ordinarily... At some point, once they... ...the cases I've seen, they leave the police force and then they get persecuted for not being former police officers. But here he was never there as a former police officer, and moreover, they were trying to get him to leave the police force. Right. According to him. I think, Your Honor, the issue is because of the two failed attempts on his life, within three months' time, he had no choice but to leave. If he would have stayed any longer in Honduras, he perhaps may have never had the opportunity to be a quote-unquote former police officer. Isn't the basic problem that he just doesn't know who was shooting at him, so he really can't establish the reason, the motive? Right. That was one of the issues at the court below, but given the pervasiveness of the... What's the word? The pervasiveness of the narco state, where all the other... Well, a good majority of the other officers had already been turned, and he was afraid that it was the other officers that were shooting at him. He knew of other officers. So he may have not been able to individually identify who it was that was shooting at him, but he knew that it was either the people who didn't want him... The people who didn't want him to be on the force anymore, the people who he had stood up against, so he knew it was one of them that was shooting at him. Without knowing the individual identity, Your Honor. Counsel, Judge Gould, if I could ask you an interjecting question. Who has the burden of proof on the issue of Nexus? That is, to prove that when he's shot at, it's on account of his COPRA membership. That would fall on the petitioner, Your Honor. However, in this case, the petitioner was on the force for two years. He didn't have any incidents. Then all of a sudden, one day, when he's asked to look the other way, and he says, no, I won't do that, then there are two attempts on his life within three months. I think he's showing the Nexus. It's because he stood up and he said, no, I won't look the other way, and that's why I believe that the Nexus can be proven. But what about his testimony that what they were trying to do was getting him to leave the police force? That was his Nexus. They were angry at me because I was an uncorrupt policeman, so they wanted me to stop being a policeman. So now if he's a former policeman, how does that tie to a Nexus? Well, Your Honor, I think the fact that he stood up to them, that's the Nexus argument right there. Maybe, if there were any evidence of it, but the evidence seems to be that they were trying to get him not to be a policeman. Well, no, they were trying to get him to either go along with them or to not be a policeman. Right, so now if he's not a policeman, what's his problem? Well, we see that there were two attempts on his life. I'm sorry, what? We see that there were two attempts on his life. But he was a policeman. I understand, Your Honor. Your Honor, I think at this point I will stop talking and I'll wait for rebuttal. Good morning, Brendan Hogan for the government. Can you speak up, too? I'm sorry, I have a sight-hearing problem and it's really important. Thank you. In this case, the review petition should be denied for the reasons that Your Honor has already identified. First and foremost, unfortunately in this case, the petitioner can't show a Nexus to the incidents that he experienced in Honduras. He can't show that his status as a police officer was one central reason for the two incidents where he was shot at. First, there's a temporal problem. While he was approached by ex-police officers on three occasions, the first two times they said, you're going to let this car go through a checkpoint, and on the last occasion they said, if you don't stop being a police officer, we're going to harm you. It's unclear how long after that the shooting occurred. When you add to that, he was a police officer for two years and by his own admission, this is at pages 103 to 106 of the record, he was involved in upwards of 100 gunfights. In other words, he was getting shot at every three to five days. Furthermore, after he was shot on the first occasion, the men that approached him, asking him to leave the police force, they never approached him again. They never came up and said, we did it, this is your last. There was no connection between these men and the incident. And finally, he couldn't identify who the shooters were. He said it himself multiple times during his testimony. It might have been gang members. It might have been organized crime. It might have been ex-police officers. He simply doesn't know. And as for future persecution, as Your Honor pointed out, he was threatened, leave the police force or we will harm you. And as he admitted at pages 120 to 121 of the record, because he left, they're probably not going to do anything upon his return to Honduras. And for these reasons, the board appropriately denied the withholding of removal application. Does the panel have any other questions? Thank you. I have no questions. Yes. Again, Your Honor, I think it's important to note that he's not claiming protection as a result of the status as an officer alone. Again, can you speak up? He is not claiming what? Protection as a result of his status as an officer alone, but rather the key issue is that he opposed corruption and refused to engage in it, not just based on his employment as an officer. I'm really sorry, but I get totally stuck on the fact that he said, what was the threat? They told me to leave the police force. If not, they were going to kill me. Well, Your Honor, it's more than just that. That's just limiting it to one portion of his testimony. Well, he said that before. That is not one portion. I'm sorry. He also said it earlier. And what did you tell him then? Why didn't you tell him it's not what I do because I'm not a corrupt policeman? Why didn't you tell him to leave the police force because they were going to kill me? It's not once. It was more than once. No, what I'm saying is that's one aspect of his testimony. The other aspect also that – But now he's – but he can only – I mean, do you agree that even with the new elucidation of social group, policemen doesn't do it, even corrupt police, non-corrupt policemen? Well, this is more than just policemen. Besides what she isn't a policeman, she's a former policeman. Right. This is akin to whistleblowing. This is – What? This is akin to whistleblowing. This is akin to imputed – this is also imputed political opinion. There's that other portion of this case as well, Your Honor. It's not just particular social group but also imputed political opinion. When he stood up to them, his persecutors believe that he is going to whistleblow or that he is a whistleblower. Do you have any further questions, Your Honors? Thank you. Not here, thanks. Thank you. Okay, thank you very much. Thank you. The case of Bonilla-Bonagas v. Lynch is submitted. We'll go to United States v. Lynch.
judges: Gould, Berzon, Steeh